FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUN 22 AM 9: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

CAROLYN WILLIAMS,         }
                       }
    Plaintiff,       }
                       }    CIVIL ACTION NO.
v.                   }
                       }    98-AR-1147-S
MERCHANDISE VENDING CO., INC.  }
                       }
    Defendant.       }
                       }

**ENTERED**

**JUN 22 1999**

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, Merchandise Vending Co., Inc. ("Merchandise Vending"). Merchandise Vending seeks judgment as a matter of law on all claims asserted against it by plaintiff, Carolyn Williams ("Williams"). Williams alleges that Merchandise Vending violated Title VII of the Civil Rights Act of 1964 by discriminating against her on account of her race (black) and her gender (female) in several employment decisions. For the reasons hereinafter stated, Merchandise Vending's motion is due to be granted in part and denied in part.

On or about July 15, 1997, Merchandise Vending[1] hired Williams as an order puller.[2] There is no evidence that the company posted notices of the open position in any newspaper or with any employment agency. Williams learned of the vacancy through Nat Harris, an acquaintance who

---

[1] Merchandise Vending is an Alabama corporation which employed approximately 35 people at the time of the events in question. Merchandise Vending stocks and services food vending machines in the greater Birmingham area.

[2] Plaintiff's position has also been referred to as "freezer puller" and "coding clerk."

worked in Merchandise Vending's warehouse.  Williams began work at Merchandise Vending on July 21, 1997 and received minimal training. By all accounts, Williams performed her duties satisfactorily.  Such duties included emptying trash and cleaning the facility, as well as moving food and beverage items from the freezer to the cooler so that Merchandise Vending's route drivers could pick up the items and deliver them to vending machines on each driver's route.

Approximately one month after commencing her employment with Merchandise Vending, Williams learned that the company was looking to hire additional people to work in its warehouse. Williams learned of this vacancy from the company president himself, Gerry Goldstein ("Goldstein"), who asked Williams whether she knew of anyone who might be interested in working at the warehouse.  Williams asserts that Goldstein asked this question on more than one occasion, and on each occasion, Goldstein specifically asked whether Williams knew of any **men** who might be interested in the position.  The job opening was not posted in any bulletin or otherwise advertised.

Though the parties dispute the precise point in time when Williams informed Goldstein that she would be interested in the warehouse position, the parties agree that at some point, Williams did inform Goldstein of her interest.[3]  Goldstein told Williams that she should speak to Charlie Hatcher ("Hatcher"), Merchandise Vending's vice

---

[3] Merchandise Vending hired Williams' son, Martin Williams ("Martin"),to fill the warehouse position.  The parties dispute whether Williams asked for the warehouse position before or after Martin was hired.  This dispute is immaterial, however, because the parties agree that Martin voluntarily terminated his employment with Merchandise Vending and that Williams again asked for the warehouse position after her son quit.  Whether Williams asked before or after her son was hired, she expressed an interest in the warehouse position at a time when the position was open.

president about the position.   The parties also dispute the manner in which Williams informed Hatcher of her interest in the position. Williams contends that she was given "the run-around" by Hatcher and Goldstein, meaning that she was sent from one to the other some twelve times to see about the position.  Hatcher, on the other hand, describes no such "run-around," but instead claims that Williams essentially demanded the warehouse position.  Most important for Williams' claim is  her assertion that, on several occasions, Hatcher explicitly told her that Goldstein would not permit a woman to work in the warehouse. Williams claims that  Hatcher made such statements as "I'm just going to tell you the truth; that is [Goldstein's] warehouse, and [Goldstein] ain' t going to have no woman in his warehouse."  *Pl. Dep.* at 144.

Williams maintains that the last time she spoke to Hatcher about the position, Hatcher said "since you are not happy in the position that you are in, you can pick up your paycheck tomorrow." *Pl. Dep.* at 148.   Williams understood this statement to mean that she was fired. Merchandise Vending maintains that Williams voluntarily terminated her employment.

Based  on  the  foregoing  facts,  Williams  filed  a  charge  of discrimination  with  the  Equal  Employment  Opportunity  Commission ("EEOC") in September of 1997.  This charged alleged that Merchandise Vending failed to promote her and terminated her because of her sex. Williams later amended her EEOC charge to include identical claims for race  discrimination.   In  her  complaint,  Williams  asserts  that Merchandise Vending discriminated against her because of her sex and her race in terminating her employment, in failing to promote her to a  warehouse  position,  and  in  other  terms  and  conditions  of  her

3

employment.

Merchandise Vending is due to be granted summary judgment on all of Williams' claims of racial discrimination.  Evidence presented by Williams in opposition to Merchandise Vending's Rule 56 motion respecting race discrimination does not create a genuine issue of material fact.  Williams' deposition testimony contains references to conversations of unidentified employees that do contain some statements involving race.   These statements, however, are totally unrelated to Williams' claim of racially discriminatory termination and failure to promote.  They also fall far below what constitutes an actionable claim for discrimination in terms and conditions of employment.  Williams' failure to make any reference to her race claim in her opposition to summary judgment suggests that she reached the same conclusion and chose to forego the argument.   Summary judgment is therefore appropriate on Williams' claims for racial discrimination.

Merchandise Vending is also entitled to judgment as a matter of law on Williams' claim that she was terminated because of her sex. Assuming that Williams was terminated, as she contends, she presents neither evidence nor argument to suggest that Williams' status as a female had anything to do with Hatcher's decision to fire her.  Summary judgment is therefore appropriate as to her alleged termination.

Merchandise Vending is not entitled to judgment as a matter of law on Williams' claims that it failed to promote her because of her sex and that it otherwise discriminated against her because of her sex in the terms and conditions of her employment.  Though the company now contends that the position Williams sought was not vacant, this argument only creates a dispute of material fact.  Deposition testimony

4

of Hatcher, Goldstein, and Williams make clear that the company was actively seeking warehouse employees.  Merchandise Vending also contends that Williams cannot make out a *prima facie* case of sex discrimination.  No one disputes that plaintiff is a female.  No one disputes that she was qualified for the warehouse position and that she applied.[4]  Goldstein testified that the position Williams sought was filled by a male after plaintiff left the company.  Most compelling is Williams' account of Hatcher's statement that Goldstein would not allow women to work in the warehouse.  This statement, if believed, would constitute direct evidence of sex discrimination.  Merchandise Vending vigorously disputes plaintiff's veracity on this point, but a genuine issue of material fact is presented by this dispute.  Summary judgment is therefore inappropriate on Williams' claim that Merchandise Vending failed to promote her and/or discriminated against her in her terms and conditions of employment because of her sex.

An appropriate order granting in part and denying in part defendant's motion for summary judgment will be separately entered.

DONE this _____ 22ⁿᵈ _____ day of June, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Williams' expression of interest in the position to Goldstein and Hatcher is sufficient to constitute an "application" since Merchandise Vending had no formal job posting or application process.